UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                               )
DWIGHT J. LOVING,                              )
                                               )
             Plaintiff,                        )
                                               )
     v.                                        )     Civil Action No. 1:06-cv-1655 (ESH)
                                               )
UNITED STATES DEPARTMENT                       )
OF DEFENSE and UNITED STATES                   )
DEPARTMENT OF THE ARMY                         )
                                               )
             Defendants.                       )
_____       )

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT**

Defendants, the Department of Defense ("DoD") and the Department of the Army, submit this reply in support of their motion for summary judgment and in opposition to plaintiff Army Private Dwight Loving's cross motion for summary judgment. In their opening brief, DoD and the Army demonstrated that they have discharged all of their statutory obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, by conducting searches that were reasonably calculated to discover all potentially responsive documents, and by withholding only those documents or information falling within a specific FOIA or Privacy Act exemption.

In response, Loving challenged defendants' withholding as to only 10 documents (hereinafter "the withheld documents"), several of which consist of recommendations to the President, or to the Secretary of the Army for transmittal to the President, regarding whether the President should approve, commute, or remit Loving's death sentence under Article 71(a) of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 871(a). According to Loving, such

recommendations are similar to presentence investigation reports, which, the Supreme Court has

held in *Department of Justice v. Julian*, 486 U.S. 1 (1988), are subject to disclosure under FOIA.

Loving also argues that defendants' assertion of presidential communications privilege as to

some of those documents is outweighed by his compelling need for the withheld information.

As discussed below, *Department of Justice v. Julian* is inapposite here because

recommendations to the President regarding how he should exercise his constitutional power to

approve a military death sentence or to grant clemency are nothing like presentence investigation

reports.  Moreover, despite Loving's asserted need for the withheld documents, the law is well-

established that neither a requester's identity nor his need for the withheld information is relevant

to determining whether a FOIA exemption applies.

## ARGUMENT

I.    **THE SUPREME COURT'S DECISION IN *DEPARTMENT OF JUSTICE V. JULIAN* DOES NOT PRECLUDE THE GRANT OF DEFENDANTS' MOTION SUMMARY JUDGMENT**

In moving for summary judgment, defendants submitted two Vaughn indexes, five

declarations, and numerous other exhibits, demonstrating that they have satisfied their statutory

obligations under FOIA and the Privacy Act.[1]  In response, Loving challenged the withholding of

10 documents (five by DoD and another five by the Army) on the sole basis that those documents

are similar to presentence investigation reports or relate to sentencing, and thus that the Supreme

Court's decision in *Department of Justice v. Julian* requires disclosure of such recommendations.

---

[1]  In the course of responding to plaintiff's opposition and cross motion for summary judgment, defendants discovered certain minor errors in their prior submissions relating to the 10 withheld documents.  Those errors are corrected and explained in the Second Declaration of Colonel Flora D. Darpino, dated May 1, 2007, and the Second Declaration Robert E. Reed, dated May 2, 2007, both of which declarations accompany this Reply and Opposition.

As discussed below, Loving's reliance on *Julian* is misplaced.

A.    **Defendants Have Properly Withheld Draft Recommendations or Documents Relating to Proposed Procedures for Transmitting a Military Capital Case to the President under FOIA Exemption 5**

As an initial matter, even assuming that recommendations to the President regarding whether he should approve, commute or remit Loving's death sentence are equivalent to presentence investigation reports, only four of the ten challenged withholdings are such recommendations or relate to the actual processing of such recommendations. The other six documents are either draft recommendations or other draft documents, and thus their disclosure cannot possibly be compelled by *Julian*, which only dealt with disclosure under FOIA of actual sentencing recommendations contained in presentence investigation reports.

Specifically, of the five documents withheld by the Army – item numbers 408, 458, 465, 497 and 499 in the Vaughn index attached to the Declaration of Colonel Flora D. Darpino ("Army Vaughn index") (dkt #7) – three are drafts.[2] As explained in the declaration of Colonel Darpino, the Army withheld under Exemption 5 the advice and recommendation (and several drafts thereof) of the Army Judge Advocate General to the Secretary of the Army regarding whether to approve Loving's death sentence. *See* Darpino Decl. ¶ 26. Army Vaughn index item number 458 is a draft containing the signature block of Major General Nardotti and item number 465 is a draft containing the signature block for Major General Romig. *Id.* The final advice and

_____

[2] As indicated in the Army Vaughn index, item numbers 497 and 499 are additionally protected under the Privacy Act's general exemption provision 5 U.S.C. § 552a(j)(2). *See also* 2d Darpino Decl. ¶ 5. Again, Loving's only argument regarding the Privacy Act exemption is that disclosure of the documents is compelled by *Julian*. *See* Pl.'s Opp. & Cross Mot. for Sum. J. at 17. Yet, *Julian* has nothing to do with the Privacy Act, and as discussed in the text, its reasoning concerning disclosure of presentence investigation reports under FOIA simply does not apply here.

recommendation is the version signed by Major General Romig on January 13, 2004 and accounted for in the Vaughn index at item number 408.  *Id.*  In addition, Army Vaughn index item number 497, is an undated, one-page draft memorandum from the Acting Secretary of the Army to the President containing the Acting Secretary's recommendation regarding whether to approve Loving's death sentence.  It is a draft of item number 499, which contains the actual recommendation.

In other words, item numbers 458, 465, and 497 are draft recommendations, and as such, they are quintessentially deliberative documents.  *See Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  As the D.C. Circuit has held, Exemption 5 "covers recommendations, *draft documents*, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency.  Documents which are protected by the privilege are those which would inaccurately reflect or prematurely disclose the views of the agency, suggesting as agency position that which is as yet only a personal position."  *Id.* (emphasis added).  Accordingly, the Army properly withheld these documents under the deliberative process privilege.[3]

As to the five documents withheld by DoD, only two – item numbers 86 and 87 in the Vaughn index attached to the Declaration of Robert E. Reed ("DoD Vaughn Index") ("dkt #7") – relate to an actual recommendation regarding Loving's death sentence or the processing of such recommendation.  DoD Vaughn index item numbers 33 through 35, on the other hand, concern

---

[3] Notably, Army Vaughn index item numbers 458 and 465 are additionally protected by the attorney work-product privilege because they were prepared by attorneys in connection with an on-going criminal prosecution and in the context of Loving's repeated attempts to seek collateral review of his conviction and sentence.  *See* Darpino Decl. ¶¶ 28-31.

proposed procedures for transmitting military capital cases to the President. As discussed in the

Reed declaration, these documents were generated in connection with a project initiated by

DoD's General Counsel to consider adopting a DoD directive for all the Military Departments

regarding the transmittal of military capital cases to the President for final action. *See* Reed Decl.

¶¶ 2, 6. Specifically, item numbers 33 and 34 were draft memoranda prepared in anticipation of

advising the President and the Secretary of Defense, respectively, of the proposed directive or

recommendation concerning the processing of military capital cases, whereas item number 35 is

a draft proposal of the directive.[4] *See id*. ¶¶ 6-7. There were no final versions of these three

documents because ultimately the DoD project was terminated before any directive was

recommended or adopted. *Id.* ¶ 2.

Loving argues that because item numbers 33 through 35 allegedly are "of particular

relevance to sentencing," their disclosure is compelled by *Julian*. *See* Pl.'s Opp. & Cross Mot.

for Sum. J. at 12. That argument is without merit because procedures concerning the processing

of military capital cases that were never adopted or implemented cannot possibly shed light on

the substance of any actual recommendation regarding Loving's death sentence, much less

constitute anything akin to a presentence investigation report. Instead, as defendants discussed in

detail in their opening brief at 17-18, these documents are at the core of what the deliberative

process privilege is intended to protect because they reflect debate and candid consideration of

---

[4] Item number 35 was also forwarded to the Joint Service Committee on Military Justice
("JSC") for its separate review and consideration as possible amendments to the Rules for
Courts-Martial. *See* Reed Decl. ¶ 7. As discussed in defendants' opening brief at 3 and 18, JSC
is a committee operating under the direction of DoD's General Counsel to conduct annual review
of the Manual for Courts-Martial and to propose amendments to the Manual and is, by its very
nature, a deliberative body.

alternatives by and among the Military Departments, and the disclosure would hamper the integrity of the decision-making process itself. *See Jordan v. Department of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (*en banc*) (deliberative process privilege "protects the integrity of the decision-making process itself by confirming that officials should be judged by what they decided[,] not for matters they considered before making up their minds"), *overruled in part on other grounds by Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (*en banc*). Accordingly, DoD has properly withheld these documents.[5]

## B.    *Department of Justice v. Julian* Is Inapposite

As for the remaining four documents (Army Vaughn index item numbers 408 and 499 and DoD Vaughn index item numbers 86 and 87), which concern Loving's death sentence, including whether his sentence should be approved by the President, their disclosure is not required by *Julian*. In *Julian*, the Supreme Court held that the Government could not withhold under FOIA Exemption 5 presentence investigation reports from the subjects of the reports – except as to matters relating to confidential sources, diagnostic opinions, and other information that may cause harm to a defendant or to third parties – because there is "no privilege preventing disclosure" when the request is made by the subject of the report. *See* 486 U.S. at 14.

Specifically, the Court noted that Exemption 5 "exempts those documents, and only those documents, normally privileged in the civil discovery context," because the purpose of Exemption 5 is "to ensure that any internal memorandums which would routinely be disclosed to a private party through the discovery process in litigation with the agency would be available to

---

[5] As discussed in the Reed Declaration, DoD Vaughn index number 33 and 34 are additionally protected by the attorney work-product privilege. *See* Reed Decl. ¶¶ 8.

the general public." *Id.* at 11-12 (citation and internal quotations omitted). In assessing whether presentence investigation reports are normally subject to a privilege in discovery, the Court found that while courts have been very reluctant to give third parties access to such reports prepared for some other individual or individuals, there were no similar restrictions on discovery of presentence investigation reports when the individual requesting discovery is the subject of the report. *See id.* at 12. Indeed, the Court reasoned that "it appears that the reasoning of the cases denying disclosure to third-party requesters would have little applicability to a request by a defendant to examine his own report, particularly in light of [Fed. R. Crim.] Rule 32(c)'s specific mandate that the report be disclosed to the defendant during sentencing." *Id.* at 13. Because most privileges covered by Exemption 5 arise as a result of judicial decision, the Court further noted, "unless the privilege is constitutionally rooted, Congress may determine for itself which privileges the Government may avail itself of and which it may not," as it had intimated through the disclosure portions of Rule 32(c) and the Parole Act, which also required disclosure of the report to the prisoner 30 days before a scheduled parole hearing. *Id.* at 13; 18 U.S.C. § 4208, repealed. As the Court stated, "[h]ere, the thrust of the disclosure portions of Rule 32(c) and the Parole Act speaks so strongly against the existence of a privilege on the part of the Government when the request is from the subject of the report that we think it accurate to say that Congress has strongly intimated, if it has not actually provided, that no such privilege should exist." *Id.* The Court thus concluded that "there was simply no privilege preventing disclosure" to the subject of the report. *Id.* at 14.

*Julian* is inapplicable here for several reasons. To begin with, the four documents at issue, which contain either recommendations as to whether Loving's death sentence should be

approved or the processing of Loving's case, are of a wholly different nature than a presentence investigation report. A presentence investigation report is prepared by a probation officer for use by the district court at sentencing and its treatment is specifically governed by Federal Rule of Criminal Procedure 32. Not only is its disclosure required under Fed. R. Crim P. 32(e) (requiring the probation officer to give the report to the defendant, the defendant's attorney, and an attorney for the government at least 35 days before sentencing), but it generally incorporates the defendant's input and objections. *See* Fed. R. Crim. P. 32 (f) (requiring the probation officer to submit seven days before sentencing to the court and to the parties the presentence report and an addendum containing any unresolved objections, the grounds for those objections, and the probation officer's comments on them); *see also* Fed. R. Crim. P. 32 (i)(1)(D). The district court may also allow parties to introduce evidence on the objections. Fed. R. Crim. P. 32 (i)(2). In fact, presentence investigation reports are much like the sentencing recommendations made by the staff judge advocate to the convening authority in court martial proceedings, which similarly are provided to the convicted, *see* R.C.M. 1106(f)(1), and which Loving had reviewed with respect to his own sentencing. *See* Ex. A to Pl's Cross Mot. for Sum. J. ("As you know, R.C.M. 1106(f), *MCM*, requires that service of the staff judge advocate's post-trial recommendation be effected on the accused and defense counsel and that defense counsel be afforded the opportunity to comment thereon; that occurred long ago in this case.").

In contrast, the four documents at issue are internal deliberative documents prepared to aid the President, as the Commander in Chief, in the exercise of his constitutional power to approve Loving's death sentence or grant clemency. *See* Const. Art. II. § 2. The four documents are: (1) a one-page, undated memorandum from DoD's General Counsel to the Counsel for the

President (DoD Vaughn index item number 87); (2) a one-page memorandum from the Acting

Secretary of the Army to the President, dated November 8, 2004 (Army Vaughn index item 499);

(3) a 32-page memorandum from the Army Judge Advocate General to the Acting Secretary of

the Army, dated January 13, 2004, that accompanied item 499 (Army Vaughn index item 408);

and (4) a one-page memorandum from the Secretary of Defense to the President, dated January 8,

2006 (DoD Vaughn index item 86).  There is no congressional or other mandate that these

documents be disclosed to the subject of the memoranda, as is the case with presentence

investigation reports (and hence, the Supreme Court's finding that no privilege normally exists

for disclosure of such reports to persons who are the subjects of the reports).  Nor is there any

statutory requirement that the convicted military personnel be allowed to participate in the

preparation of such documents, even though the President could have prescribed such a rule

pursuant to Article 36 of the UCMJ.[6]  *See* 10 U.S.C. § 836.

In fact, whereas the Supreme Court found no privilege preventing the disclosure of

presentence investigation reports and federal statutes concerning such reports actually counsel

against a finding of such a privilege, the four documents at issue fall squarely within privileges

that are normally recognized in civil discovery, including one that is "constitutionally rooted,"

*Julian*, 486 U.S. at 13, namely, the presidential communications privilege.[7]  *See United States v.*

---

[6] It is worth noting, however, that in this case, Loving was given more than one opportunity to submit any written matters he wished to the Army Judge Advocate General regarding his sentence, and was also advised that any such submissions would be appended to the file to be forwarded to the Secretary of the Army for action by the President.  *See* Exhibit A to Pl's Opp. Cross Mot. for Summary Judgment, at 2.

[7] In their opening brief, DoD omitted to assert the presidential communications privilege with respect to item 87, and has now submitted a declaration to correct that omission.  *See* 2d Reed Decl. ¶ 3.

*Nixon* (*Nixon I*), 418 U.S. 683, 705, 708 (1974) (the presidential communications privilege is "inextricably rooted in the separation of powers under the Constitution," and "flow[s] from the nature of enumerated powers" of the President). As discussed in detail in defendants' opening brief at 22-23, the privilege applies to all those documents "solicited and received by the President or his immediate White House advisers who have broad and significant responsibility for investigating and formulating the advice to be given to the President." *Judicial Watch v. Department of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004).

Here, two of the four challenged documents are addressed to the President himself, one was prepared for transmittal to the President and was in fact transmitted to the President (*i.e.*, the Army Judge Advocate General's recommendation),[8] and one is addressed to the Counsel to the President, who is one of the President's immediate advisers. As noted above, all four documents were prepared to assist the President in the exercise of his Article II powers. The need for confidentiality for such type of communications cannot be clearer. As observed by the D.C. Circuit, "[a]t core, the presidential communications privilege is rooted in the President's need for confidentiality in the communications of his office . . . in order to effectively and faithfully carry out his Article II duties and to protect the effectiveness of the executive decision–making process." *Id.* at 1115 (internal quotation marks and citations omitted).

---

[8] As explained in defendants' opening brief at 3, in the Manual for Court-Martial, the President has directed that in death penalty cases, "the Judge Advocate General shall transmit the record of trial, the decision of the Court of Criminal Appeals, the decision of the Court of Appeals for the Armed Forces, and the recommendation of the Judge Advocate General to the Secretary concerned for the action of the President." *See* R.C.M. 1204(c)(2). The Army Judge Advocate General's recommendation regarding Loving's death sentence was accordingly appended to the Secretary of the Army's memorandum for transmittal to the President, and was in fact delivered to the White House on January 23, 2006. *See* Darpino Decl. ¶¶ 7, 32-33.

In addition, as discussed in detail in defendants' opening brief and in the Reed and Darpino declarations, each of the four documents is additionally protected against disclosure by other privileges. For example, the memorandum from the Army Judge Advocate General, the Army's most senior uniformed attorney, to his recognized client, the Acting Secretary of the Army, regarding whether to approve Loving's death sentence is unquestionably protected by the attorney-client privilege. *See* Darpino Decl. ¶ 27. The other three documents are additionally protected by the deliberate process privilege because they are pre-decisional and are "a direct part of the deliberative process" in that they make "recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).

In sum, *Julian* does not compel disclosure of these four documents because unlike presentence investigation reports, they are normally privileged in civil discovery, and thus, Exemption 5 protects against their disclosure.

### C.    Neither Plaintiff's Identity Nor His Need for the Withheld Documents Are Relevant in Determining the Applicability of A FOIA Exemption

Nevertheless, Loving argues that because he "is the subject of the [four withheld documents], disclosure fits squarely within the rationale of *Julian*." Pl.'s Opp. & Cross Mot. for Sum. J. at 12. Citing *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), a case involving grand jury subpoena to the White House for production of documents protected by the presidential communications privilege, Loving further contends that he has a compelling need for the withheld documents, outweighing any assertion of presidential communications privilege as to those documents. Pl.'s Opp. & Cross Mot. for Sum. J. at 14. Neither argument has any merit.

It is well settled that "discovery limitations, civil or criminal, [] do not apply when FOIA

requests are presented in a discrete civil action." *North v. Walsh*, 881 F.2d 1088, 1096-1097 (D.C. Cir. 1989). As the D.C. Circuit has said, "[t]he plaintiff's rights in a FOIA action do not depend on his or her identity" because FOIA's "'sole concern is with what must be made public or not made public.'" *Id.* (quoting *Department of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 772 (1989)). The Supreme Court has also made clear that "Congress clearly intended the FOIA to give any member of the public as much right to disclosure as one with a special interest [in a particular document]." *Department of Defense v. Federal Labor Relations Auth.,* 510 U.S. 487, 496 (1994) (alteration in original) (internal quotation marks and citation omitted); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n.10 (1975) ("Sears' rights under (FOIA) are neither increased nor decreased by reason of the fact that it claims an interest . . . greater than that shared by the average member of the public.").

The Supreme Court's decision in *Julian* is not to the contrary. Although the Court in that case focused on the fact that the requesters in that case were the subject of the requested presentence investigation reports, that was in the context of determining whether such reports are normally privileged in the discovery context, which is a predicate to an Exemption 5 claim. In contrast, as discussed before, there is no question that the four withheld documents at issue are normally privileged in the discovery context by the presidential communications and other privileges. And thus, it is irrelevant that plaintiff might have been the subject of the documents at issue. As the Supreme Court later explained in *Reporters Committee*, 489 U.S. at 771, *Julian* applies only where the government's objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege." That clearly is not the case here, and thus, plaintiff's identity is not relevant here. Indeed, even in *Julian*, the Supreme

12

Court said explicitly that "we cannot construe Exemption 5 in such a way as to make an agency's duty to disclose a presentence report turn on the *nature or identity* of the requester." *Julian*, 486 U.S. at 13 (emphasis added).

By the same token, Loving's need for the documents is irrelevant. Loving argues that he needs to ensure the accuracy of any factual assertions underlying the recommendation, especially with respect to presentation of evidence of mitigation of evidence, and to comment on, or rebut, the rationale of the recommendations. *See* Pl.'s Opp. & Cross Mot. for Sum. J. at 14. He appears to be particularly concerned that the President might not have been provided with a copy of the September 29, 2006 decision of the Court of Appeals for the Armed Forces, which ordered a hearing to determine the effectiveness of Loving's trial counsel, and that the President may act before such a hearing occurs. *See id.* at 5-6.

But "[i]n the FOIA context, the requesting party's need for the information is irrelevant; the most urgent need will not overcome an applicable FOIA exemption." *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984); *see also Reporters Committee*, 489 U.S. at 772 (recognizing that "the particular purpose for which the document is being requested" is not relevant to the determination of whether disclosure is warranted under the FOIA); *United Technologies Corp. v. FAA*, 102 F.3d 688, 690 (2d Cir. 1996) ( "It is a basic principle under FOIA that the individuating circumstances of a requester are not to be considered in deciding whether a particular document should be disclosed.").

Put differently, a person's rights under FOIA are neither diminished nor enhanced by his "litigation-generated need" for agency documents. *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n. 23 (1978); *accord NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10

(1975); *Solar Sources, Inc. v. United States,* 142 F.3d 1033, 1041 (7th Cir. 1998) (FOIA requesters' desire to use the withheld information to privately enforce the antitrust laws is not relevant to a determination of the merits of their request). As the Supreme court has said, "[i]t is not difficult to imagine litigation in which one party's need for otherwise privileged documents would be sufficient to override the privilege but that does not remove the documents from the category of the normally privileged." *FTC v. Grolier*, 462 U.S. 19, 28 (1983).

This is true even where the requester's liberty interest is at stake. *See Engelking v. Drug Enforcement Admin.,* 119 F.3d 980, 980-81 (D.C. Cir. 1997) (plaintiff, who was serving life sentence, sought exculpatory information under FOIA; holding that "a requester's personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA"); *Hale v. Department of Justice*, 226 F.3d 1200, 1204 n. 4 (10th Cir. 2000) (criminal defendant who has been sentenced to death sought information under FOIA for purposes of collateral attack on his sentence; holding that the criminal defendant's need for the requested information was irrelevant to determining whether a FOIA exemption applies).

Plaintiff's reliance in *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997), for the proposition that the assertion of presidential communications privilege under FOIA Exemption 5 can be overcome by an adequate showing of need, is thus entirely misplaced. That case involved a subpoena in the grand jury context, and the claim of presidential communications privilege was not made pursuant to FOIA Exemption 5. As the D.C. Circuit has said before, "[i]t is unsound to equate the FOIA exemptions and similar discovery privileges." *Friedman*, 738 F.2d at 1344. While FOIA's sole concern is with what must be made public, "[i]n the discovery context, when

14

qualified privilege is properly raised, the litigant's need is a key factor. Whether the information

is disclosed depends on the relative weight of the claimant's need and the government's interest

in confidentiality." *Id.*; *see also Washington Post Co. v. U.S. Dept. of Health and Human*

*Services*, 690 F.2d 252, 258-259 (D.C. Cir. 1982) ("the particular need of the requester is

irrelevant under FOIA, but critical in discovery actions. . . . Conversely, the general public

interest in certain information, a key factor under FOIA, is irrelevant in discovery."); *Lardner v.*

*Department of Justice*, No. 03-3108, 2005 WL 758267 at *8 (D.D.C. March 31, 2005) (J. Bates)

(case involving presidential communications privilege asserted in a FOIA case; noting that there

is a "critical difference between the government's invocation of a privilege in civil discovery and

its decision to withhold documents under FOIA"). Thus, the discovery limitations discussed in

*In re Sealed Case* simply have no application here.

      In sum, plaintiff's identity and need for the withheld documents is irrelevant in this case.

## II.    DEFENDANTS HAVE NOT FAILED TO PRODUCE REASONABLY SEGREGABLE FACTUAL INFORMATION IN THE WITHHELD DOCUMENTS

      Loving next argues that DoD and the Army have failed to produce reasonably segregable

factual information contained in the withheld documents. His argument has no merit. As

discussed before, four of the withheld documents are subject to the presidential communications

privilege, which "is a broader privilege that provides greater protection against disclosure" than

the deliberative process privilege. *See Judicial Watch*, 354 F.3d at 1114. Importantly, not only

does the privilege cover final and post-decisional materials as well as pre-deliberative ones, but it

also "applies to documents in their entirety." *Id.* (quoting *In re Sealed Case*, 121 F.3d at 745). In

15

other words, defendants had no duty to segregate any factual information from the four documents subject to the presidential communications privilege.

As for the remaining six withheld documents, four are subject to the attorney work-product privilege, which similarly protects the documents against disclosure in their entirety. Those documents are Army Vaughn index item numbers 458 and 465 (which are drafts of the Army Judge Advocate General's recommendation to the Secretary of the Army regarding Loving's death sentence, *see* Darpino Decl. ¶¶ 28-30) and DoD Vaughn index item numbers 33 and 34 (which are draft memoranda prepared by attorneys in connection with the project initiated by DoD's General Counsel for adopting a DoD Directive regarding the processing of military capital cases, *see* Reed Decl. ¶¶ 2, 8). Again, defendants had no duty to segregate factual information in these documents because "'the circuit's law is clear that [t]he work-product doctrine simply does not distinguish between factual and deliberative material.'" *Judicial Watch, Inc. v. Department of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1187 (D.C. Cir. 1987)). "'Any part of [a document] prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine and falls under exemption 5.'" *Id.* (quoting *Tax Analysts v. I.R.S.*, 117 F.3d 607, 620 (D.C. Cir. 1997)). "In other words, factual material is itself privileged when it appears within documents that are attorney work product. If a document is fully protected as work product, then segregability is not required." *Id.*

Finally, no factual information can reasonably be segregated from the two remaining documents. DoD Vaughn index item number 35 is a draft DoD Directive concerning procedures

for processing military capital cases and contains no factual information.  Army Vaughn index item number 497 is a one-page draft recommendation of the Secretary of the Army to the President, and contains little factual information.  And the few "facts" it does contain are so inextricably intertwined with the deliberative material that disclosure of the factual material would be tantamount to disclosing the agency's deliberations.  As the D.C. Circuit has held, courts must not mechanically apply a "fact/opinion test," *Wolfe v. Department of Health and Human Services*, 839 F.2d 768, 774-76 (D.C. Cir. 1988), and "[t]o the extent that pre-decisional materials, even if 'factual' in form, reflect an agency's preliminary positions or ruminations about how to exercise discretion on some policy matter, they are protected under Exemption 5." *Petroleum Information Corp. v. United States Dep't of Interior*, 976 F.2d 1429, 1435 (D.C. Cir. 1992).

In sum, defendants had no duty to segregate the factual information from the ten withheld documents.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court grant their motion for summary judgment and deny plaintiff's cross motion for summary judgment.

Dated: May 2, 2007                    Respectfully submitted,

                                      PETER D. KEISLER
                                      Assistant Attorney General, Civil Division

                                      JEFFREY A. TAYLOR
                                      United States Attorney

                                      JOSEPH H. HUNT
                                      Director, Federal Programs Branch

17

JOHN R. TYLER
Senior Trial Counsel

_____/s/ Jean Lin_____
JEAN LIN
Trial Attorney
Federal Programs Branch, Civil Division
United States Department of Justice
20 Massachusetts Ave., N.W.
Washington, D.C.  20530
Tel: (202) 514-3716
Fax: (202) 616-8407
E-mail: jean.lin@usdoj.gov

Attorneys for Defendants

18

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| DWIGHT J. LOVING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:06-cv-1655 (ESH) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF DEFENSE and UNITED STATES | ) |
| DEPARTMENT OF THE ARMY | ) |
| | ) |
| Defendants. | ) |

---

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
STATEMENT OF MATERIAL FACTS NOT IN DISPUTE**

1.    Undisputed.

2.    Undisputed, except that plaintiff's first administrative appeal with the Department
of Defense ("DoD") was filed on January 31, 2006, not January 24, 2006 (*see*
Exhibit B attached to Declaration of William T. Kammer), and that with respect to
plaintiff's April 7, 2006 administrative appeal of DoD's alleged denial of
information from DoD's White House Military Office ("WHMO"), a DoD letter
dated March 3, 2006 informed plaintiff that WHMO had no documents responsive
to plaintiff's request (*see* Exhibit D to Kammer Declaration).

3.    Defendants are without sufficient information to form a basis on which to admit
or deny when plaintiff received DoD's March 3, 2006 letter.

4.    Undisputed.

5.    Undisputed.

6.    Undisputed.

7.      Undisputed.

Dated: May 2, 2007                          Respectfully submitted,

                                            PETER D. KEISLER
                                            Assistant Attorney General, Civil Division

                                            JEFFREY A. TAYLOR
                                            United States Attorney

                                            JOSEPH H. HUNT
                                            Director, Federal Programs Branch

                                            JOHN R. TYLER
                                            Senior Trial Counsel

                                            _____/s/ Jean Lin_____
                                            JEAN LIN
                                            Trial Attorney
                                            Federal Programs Branch, Civil Division
                                            United States Department of Justice
                                            20 Massachusetts Ave., N.W.
                                            Washington, D.C.  20530
                                            Tel: (202) 514-3716
                                            Fax: (202) 616-8407
                                            E-mail: jean.lin@usdoj.gov

                                            Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DWIGHT J. LOVING | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. Action No. 1:06-cv-1655(ESH) |
| DEPARTMENT OF DEFENSE, et. al. | ) | |
| Defendants. | ) | |

## SECOND DECLARATION OF COLONEL
## FLORA D. DARPINO

Pursuant to 28 U.S.C. § 1746, I, Colonel Flora D. Darpino, declare as follows:

1. I am a Colonel in the United States Army, and I currently serve as the Division Chief, Criminal Law Division, Office of The Judge Advocate General.

2. On March 30, 2007, I submitted a declaration in support of the defendants' motion for summary judgment in the above-captioned case.

3. In the course of reviewing plaintiff's opposition to the defendants' motion for summary judgment and plaintiff's cross motion for summary judgment, I discovered that there was a typographical error in the declaration I previously submitted. In paragraph 31, I mistakenly listed Vaughn index item number 499, instead of 497, as being subject to the attorney work-product privilege. Item number 499 is the Acting Secretary of the Army's one-page recommendation addressed to the President regarding whether to approve plaintiff Private Dwight Loving's death sentence and is specifically discussed in

1

paragraph 33 of my previous declaration as being subject to the presidential communications privilege. Item number 497 is a draft of item number 499 and was prepared by attorneys in the Criminal Law Division.

4. In addition, I also noticed that as to both item numbers 497 and 499, the Vaughn index included only the Privacy Act exemption and mistakenly omitted the applicable FOIA exemption. Accordingly, I have attached a revised index as to those two items.

5. Finally, although the Vaughn index correctly notes all of the Privacy Act documents, my prior declaration incorrectly noted that Privacy Act documents are accounted for as item numbers 468 through 497, when the last number should have been 499.

Pursuant to 28 U.S.C. § 1746, I hereby declare under the penalty of perjury that the foregoing is true and correct to the best of knowledge.

Dated this 1st day of May 2007.

FLORA D. DARPINO
Colonel, US Army
Chief, Criminal Law Division

2

DWIGHT J. LOVING, Plaintiff v. DEPARTMENT OF DEFENSE, et. al, Defendants, Civ. Action No. 1:06-cv-1655(ESH)

ATTACHED TO SECOND DECLARATION OF COL. FLORA D. DARPINO

| Item # | Author | Addressee | Document Type | Description | Date | Pgs | Comments | Rmks/Exemption(s) |
|---|---|---|---|---|---|---|---|---|
| 497 | Acting Secretary of the Army (R.L. Brownlee) | The President of the United States | Memo | Draft memorandum containing the recommendation of the Acting Secretary of the Army R.L. Brownlee in the PVT Loving capital case | Undated | 1 | Corresponds with Page 207 in the lower right corner of the documents. | Withheld in its Entirety, Exempt from release under Army Regulation 340-21, paragraph 5-5f. Prosecutorial Files. Ex. 5 -- Deliberative Process, Pre-decisional Ex. 5 -- Attorney Work-Product |
| ///////////// | ///////////// | ///////////// | ///////////// | FOIA DOCUMENT REFERRED FROM ARMY OTJAG TO THE OFFICE OF THE SECRETARY OF THE ARMY | ///////////// | ///// | ///////////////////////////////////// | ///////////// |
| 499 | The Secretary of the Army | The President of the United States | Memo | Memorandum to the President containing the recommendation of the Army's recommendation regarding whether or not PVT Loving's death sentence should be approved. | 8-Nov-04 | 1 | This is the one page referred from the Army OTJAG to the Office of the Secretary of the Army | Withheld in its Entirety, Exempt from release under Army Regulation 340-21, paragraph 5-5f. Prosecutorial Files. Ex. 5 -- Deliberative Process, Pre-decisional Ex. 5 -- Presidential communication |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DWIGHT J. LOVING** ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 06 CV 01655(ESH) |
| ) | |
| **UNITED STATES DEPARTMENT** ) | |
| **OF DEFENSE** ) | |
| ) | |
| and ) | |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **THE ARMY** ) | |

---

### SECOND DECLARATION OF ROBERT E. REED

---

I, ROBERT E. REED, declare the following to be true and correct to the best of my knowledge:

1. I am the Associate Deputy General Counsel (Military Justice and Personnel Policy), Office of the Deputy General Counsel (Personnel and Health Policy), Office of the General Counsel, Department of Defense (DoD) and have held that position since July 1997.

2. On March 27, 2007, I executed a declaration in support of DoD's motion for summary judgment in the above-captioned case.

3. Subsequent to the filing of DoD's summary judgment motion on March 30, 2007, and in the course of reviewing plaintiff Dwight Loving's opposition to DoD's motion and plaintiff's cross motion of summary judgment, I noticed that paragraph 10 of my declaration was incomplete in that it omitted to also include the presidential communications privilege as an additional basis upon which to deny release of the documents identified in the Vaughn index as items #87 and 88.

1

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated this _____2nd_____ day of May, 2007.


Robert E. Reed