## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DWIGHT J. LOVING | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:06-cv-1655 (ESH) |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF DEFENSE *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF
## CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff Dwight J. Loving ("Loving") submits this reply in support of his cross-motion for summary judgment to compel disclosure of certain documents by defendants United States Department of Defense ("DoD") and United States Department of the Army ("Army"). In his cross-motion, Plaintiff demonstrated entitlement, under the Freedom of Information Act ("FOIA") and the Privacy Act, to various documents concerning the consideration of his death sentence that have been withheld from disclosure by defendants.

After reviewing defendants' *Vaughn* submissions and bases for exemption from disclosure, plaintiff narrowed his pursuit to just ten documents in his cross-motion. Yet much like the stonewalling plaintiff has experience from the outset of lodging his requests for responsive records, the government opposed plaintiff's cross-motion by shifting its descriptions of the documents and exemptions applicable thereto. Notwithstanding plaintiff's reliance on the completeness and accuracy of the government's logs of withheld documents, and the government's representations as to the general nature and contents of those documents,

defendants changed their tune concerning eight of the ten documents identified by plaintiff as warranting disclosure. Not only have six of those documents been reclassified as "drafts," but in their Opposition defendants have taken the liberty to newly assert additional exemptions/privileges for several of the documents.

It is particularly disturbing that plaintiff, having culled through the government's indexes of over 600 withheld documents and selected a scant 10 for disclosure, has unwittingly focused on such a high percentage of records that were misidentified by defendants or, apparently, inadvertently not identified with complete claims of exemption from disclosure. The sampling rate of error here is unfortunate and unacceptable and bears directly on the credibility of the government's arguments for non-disclosure.

## I.     THE FOUR WITHHELD DOCUMENTS SOUGHT BY PLAINTIFF

In view of the government's reclassification of Item #'s 458, 465, and 497 on the *Vaughn* submission attached to the Declaration of Flora D. Darpino and Item #'s 33, 34, and 35 on the *Vaughn* submission attached to the Declaration of Robert E. Reed as "drafts," *see Dfts' Reply in Support of Summary Judg. and Opposition to Plf's Cross Mot. for Summary Judg.* ("*Dft's Reply*") at 3-5, plaintiff no longer seeks disclosure of these six records.

The present cross-motion for summary judgment thus seeks disclosure of only four additional documents from defendants (hereinafter referred to as the "Four Withheld Documents").[1] These records, two from each of Army and DoD, are identified below with a summary of the exemptions/privileges asserted by defendants for each record.

_____

[1] Defendants have not updated their initial *Vaughn* indexes to disclose any *additional* records in the form of communications concerning plaintiff sent to the President subsequent to those identified herein. Plaintiff renews his request for identification and disclosure of such records, if any exist, and requests that the Court retain jurisdiction in this matter should it be

2

**Withheld Army Records (see *Vaughn* submission attached to Darpino Decl.)**

A.  Item # 408, described as a 31 page Memorandum dated
    January 13, 2004, authored by MG Romig (The Army Judge
    Advocate General) and addressed to The Secretary of the Army,
    "containing the TJAG's advice outlining the PVT Loving case
    in detail and providing a recommendation regarding whether
    the SecArmy should recommend approval of the death penalty
    to the President" ("Item # 408");

> *Government's Claims:  Exemption 5 (Presidential
> communication privilege, deliberative process and
> predecisional, attorney work-product, attorney-
> client)*

B.  Item # 499, described as a 1 page Memorandum dated
    November 8, 2004 authored by the Secretary of the Army and
    addressed to the President, "containing the Secretary of the
    Army's recommendation regarding whether or not PVT
    Loving's death sentence should be approved" ("Item # 499");

> *Government's Claims:   Privacy Act -- Army
> Regulation 340-2, ¶ 5-5f, prosecutorial files;
> Exemption 5 (Presidential communication privilege,
> deliberative process and predecisional)*

**Withheld DoD Records (see *Vaughn* submission attached to Reed Decl.)**

C.  Item # 86, described as a 1 page Memorandum dated January 8,
    2006 from The Secretary of Defense addressed to the President
    concerning "Military Court-Martial Capital Case Forwarded
    For Action, *United States v. Dwight J. Loving*" ("Item # 86");

> *Government's Claims:  Exemption 5 (Presidential
> communication privilege, deliberative process)*

D.  Item # 87, described as an undated, 1 page Memorandum from
    the Office of General Counsel addressed to the Counsel to the
    President concerning "The President's Action in Two Military
    Capital Cases" ("Item # 87");

> *Government's Claims:  Exemption 5 (Presidential
> communication privilege, deliberative process,
> attorney work-product).*

---

discovered that defendants failed to identify all such communications through the date of final
decision on this case.

Plaintiff thus has streamlined the present action for the Court's consideration of the merits of his claims that disclosure should be compelled.

## II.    DEFENDANTS HAVE IMPROPERLY WITHHELD INFORMATION PURSUANT TO FOIA EXEMPTION 5 AND THE PRIVACY ACT

### A.    *Department of Justice v. Julian* is applicable to the present facts.

Contrary to the government's assertions, the Four Withheld Documents are akin to "presentence investigation reports" for which disclosure is compelled under FOIA pursuant to *United States Dep't of Justice v. Julian*, 486 U.S. 1 (1988). Defendants argue that the Four Withheld Documents are distinguishable from the facts of *Julian* because a presentence investigation report "generally incorporates the defendant's input and objections." *Dft's Reply* at 8. The government further argues that "the four documents at issue are internal deliberative documents prepared to aid the President." *Id.* Finally, the government argues that unlike presentence investigation reports, "[t]here is no congressional or other mandate that these documents be disclosed to the subject of the memoranda." *Id.* at 9. These arguments fail to overcome the mandate of *Julian*.

First, whether the Four Withheld Documents incorporate Loving's input and objections is unclear: Presidential review of a military death-sentenced inmate's case has not occurred in 45 years,[2] and it has been Loving's experience that the government has lacked any course-of-conduct "standards" for handling such proceedings in modern times.[3] In fact, the government has acknowledged the extraordinary nature of such proceedings:

_____

[2] *See, e.g.*, Dwight Sullivan, *A Matter of Life and Death: Examining the Military Death Penalty's Fairness*, 45-Jun Fed. Law. 38, 39 (1998).

[3] This is readily apparent, for example, from the government's confusion concerning whether plaintiff has even been entitled to military-appointed defense counsel. *See, e.g.*, Exhibit 1 attached hereto.

> Court-martial cases that include a sentence of death are rare – as is demonstrated, in part, by the fact that there have been no executions pursuant to sentence by court-martial in more than 40 years . . . Each Army death penalty case is unique.

Darpino Decl. ¶ 15.  Yet, without relying upon any regulations or standards dictating the content of the Four Withheld Documents, defendants argue that the Four Withheld Documents are distinguishable from presentence investigation reports which, to some extent, take into account the defendants' arguments.

There is nothing in the record indicating that the Four Withheld Documents do not incorporate Loving's "input and objections."  In fact, Loving was informed in 2003 that The Judge Advocate General *would* accept input from him:

> Included in the file that will be compiled by The Judge Advocate General and forwarded to the Secretary of the Army will be your prior written submissions to The Judge Advocate General of The Army, dated September 10, 1998; a copy of your letter to The Judge Advocate General of the Army, dated November 11, 1996; a copy of your letter to the Honorable William S. Cohen, dated September 8, 1998 . . .
>
> Further, you are invited to supplement your original submission with any additional written matters you wish The Judge Advocate General to consider.  The Judge Advocate General will append to the file to be forwarded to the Secretary of the Army for action by the President any written matters you elect to submit.

Exhibit A to *Plaintiff's Mem. in Opp. to Dfts' Motion for Summary Judg. and in Support of Plf's Cross-Motion for Summary Judg.* at 1-2.  Thus, there is every reason to believe that the Four Withheld Documents do involve, to some extent, Loving's "input and objections," demonstrating that some course-of-conduct may also exist.

Second, whether the Four Withheld Documents are "internal deliberative documents prepared to aid the President" is irrelevant to the Supreme Court's holding in *Julian* which

5

nowhere carves out an exception for disclosure of sentencing recommendations made at a

particular stage of sentencing, *e.g.*, Presidential action on a death sentence recommendation.

*Julian* does counsel disclosure, however, "when the individual requesting discovery is the

subject of the report" because "there simply is no privilege preventing disclosure."  486 U.S. at

12, 14.

Whether Presidential communications privilege even is applicable to the Four Withheld

Documents also is unclear.  For example, Army's *Vaughn* index Item # 408 is a sentencing

recommendation from The Army Judge Advocate General to The Secretary of the Army.  Such a

document may not properly be viewed as one that has been "solicited and received" by the

President as explained in *Judicial Watch v. Department of Justice*, 365 F.3d 1108, 1114 (D.C.

Cir. 2004).  In particular, *Judicial Watch*, cited by Defendants to allegedly support nondisclosure

of the Four Withheld Documents, instead explains:

> However, in *In re Sealed Case*, the court recognized that, in
> determining whether "restricting the presidential communications
> privilege to communications that directly involve the President will
> 'impede the President's ability to perform his constitutional duty,'"
> *121 F.3d at 751* (quoting *Morrison v. Olson, 487 U.S. 654, 691,
> 101 L. Ed. 2d 569, 108 S. Ct. 2597 (1988))*, there is, in effect, a
> hierarchy of presidential advisers such that the demands of the
> privilege become more attenuated the further away the advisers are
> from the President operationally. *See id. at 752*. Thus, as we
> demonstrate below, because pardon documents obtained from
> other agencies by Justice Department staff undergo various stages
> of intermediate review before pardon recommendations are
> submitted for consideration by the President and his immediate
> White House advisers, with some documents never making their
> way to the Office of the President, the same confidentiality and
> candor concerns calling for application of the presidential
> communications privilege in *Nixon I and II* and *In re Sealed Case*
> do not apply as forcefully here.

365 F.3d at 1115 (emphasis added).  Item # 408 wound through the Army and eventually arrived

at the Secretary of Defense.  *See, e.g.*, Reed Decl. *Vaughn* Item # 86; Darpino Decl. ¶ 7.

Loving's "case" later was delivered to the President by members of the Army Staff acting on

behalf of the Secretary of the Army.  Darpino Decl. ¶ 7.

    *In re Sealed Case* expresses concern about impeding the President's ability to perform his

"constitutional duty," 121 F.3d at 751, but the President cannot discharge his Article II, Section 2

constitutional duties either as Commander in Chief or through his "Power to grant Reprieves and

Pardons" without providing plaintiff an opportunity to review and comment upon the Four

Withheld Documents prior to deciding plaintiff's fate.  Otherwise, the President would have an

incomplete picture of Loving's case and the President would be denying due process to this

convicted servicemember.  In addition, on balance, the need for accountability of the executive

branch—particularly the President in his unusual role as a quasi-judicial, military sentencing

authority—outweighs the need for protecting any so-called decisionmaking process that

otherwise might occur based on a one-sided presentation of evidence and a "final" sentencing

recommendation.

    In addition, it is plaintiff's understanding that Item # 408 has been forwarded to the

President, but it is far from clear that Item # 408 has been "solicited" by the President and thus is

subject to the "constitutionally rooted" Presidential communications privilege.  *See, e.g., Julian*,

486 U.S. at 13.  Similarly, it is unclear whether Item #'s 86, 87, or 499 are "solicited" by the

President.  Moreover, it is unclear whether the President has personally invoked the presidential communications privilege with respect to these documents.[4]

Third, in attempting to distinguish *Julian*, the government relies heavily on the lack of any congressional mandate or statutory requirement that the Four Withheld Documents be disclosed to plaintiff.  This observation is not dispositive, however.  In bolstering the Court's disclosure mandate, *Julian* simply follows the Supreme Court's protection of the "constitutional command that no person shall be deprived of life without due process."  *See, e.g., Gardner v. Florida*, 430 U.S. 349, 351 (1977) (holding that the "petitioner was denied due process of law when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain").

The Four Withheld Documents do not relate to confidential sources, diagnostic opinions, or other information that might cause harm to the prisoner or to third parties.  *Julian*, 486 U.S. at 9.  Nor do the documents have any bearing on national security or other compelling interests that should give pause.  To the contrary, under *Julian*, sentencing recommendations like those in the Four Withheld Documents are not sheltered from disclosure by Exemption 5 of FOIA, 5 U.S.C. § 552(b)(5).  *Id.* at 14.

Defendants also argue that the Four Withheld Documents are variously protected by other privileges.  According to the government, each of the Four Withheld Documents are protected by the deliberative process privilege.  *Dfts' Reply* at 11.  But the Four Withheld Documents are the type of documents that would be "routinely" or "normally" disclosed.  *See Julian*, 486 U.S. at 11, *citing FTC v. Grolier Inc.*, 462 U.S. 19, 26 (1983).  For example, presentence reports are made

---

[4] Neither the Declaration of Darpino from DoD nor the Declaration of Reid from Army states that the declarant was specifically authorized by the President to invoke the presidential communications privilege.

available to the convicted pursuant to Fed. R. Crim. P. 32(f).  Also, in evaluating the deliberative

process privilege, the balance of interests weighs in favor of releasing these records and to the

agency's obligation to disclose all reasonably segregable, nonexempt portions.  *See Judicial*

*Watch*, 365 F.3d at 1124.  On balance, plaintiff is entitled to access to the Four Withheld

Documents because defendants have not sufficiently demonstrated that disclosure would result in

specific and tangible harm to an identifiable public interest.  Any anticipated harm is not serious

enough to outweigh the strong public interest considerations favoring disclosure in this area of

military death sentencing that has remained dormant for many decades but now is receiving

increasing attention by the Army and consequently the President.

 With respect to Item # 408, the memorandum from the Army Judge Advocate General to

"his recognized client" the Secretary of the Army, the government claims attorney-client

privilege.  *Dfts' Reply* at 11.  It is clear, however, that Item # 408 does not remain with the client,

the Secretary of the Army, but instead is transferred to the Secretary of Defense as well as the

President and his advisors, and thus privilege is waived.  So too is the alleged work product

privilege waived by the transfer of this document beyond the control of the Secretary of the

Army.

 With respect to Item # 499, a memorandum from the Secretary of the Army to the

President, this document clearly lies within the sphere of *Julian*'s influence because it

specifically contains a sentencing recommendation.  In particular, this document provides the

Secretary of the Army's recommendation to the President concerning whether the President

should approve a death sentence for plaintiff.  The government cites Army Regulation 340-2, ¶

5-5f as a basis for withholding this document under the Privacy Act.  However, because this

document was "separately processed under FOIA by the Army," *see Memorandum in Support of Dfts' Motion for Summary Judg.* at 30, the Privacy Act exemption does not control.[5]

## B.    Narrow construction of FOIA Exemption 5 is required and thus the exemption does not support withholding of the Four Withheld Documents.

Exemptions to disclosure under FOIA are to be "narrowly construed." *Julian*, 486 U.S. 1 at 8 (1988); *FBI v. Abramson*, 456 U.S. 615, 630 (1982); *Department of Air Force v. Rose*, 425 U.S. 352, 361 (1976). Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Narrowly construing the language of Exemption 5, it is clear that this exemption is inapplicable to the Four Withheld Documents. Due process constitutional protections surely require disclosure of the Four Withheld Documents—bearing on the ultimate sentence to be levied by the President on plaintiff Loving—and thus they would be available to plaintiff "by law."

Furthermore, under *Julian*, "there simply is *no* privilege preventing disclosure" of records like the Four Withheld Documents under FOIA Exemption 5. 486 U.S. at 14. The class of documents sought by plaintiff and representative of the Four Withheld Documents are documents relating to recommendations concerning his sentencing, and these are the type of documents that are routinely made available during presentencing proceedings both in the

_____

[5] Plaintiff notes that the while the *Vaughn* index attached to the Darpino Declaration does not list any "addressee" for Item # 499 other than the President, the comments to that entry indicate that "[t]his is the one page referred from the Army OTJAG to the Office of the Secretary of the Army." Apparently, therefore, Item # 499 is not just "maintained in the files of the Criminal Law Division" as claimed by defendants. *See Memorandum in Support of Dfts' Motion for Summary Judg.* at 30.

10

civilian and in the military context.[6]  *See, generally, Julian*, 486 U.S. 1 (federal presentence

investigation reports not exempt from disclosure under FOIA Exemption 5); Rules for Courts

Martial 1106(f)(1) (sentencing recommendations made by the staff judge advocate to the

convening authority are disclosed to defendants).

      **C.**     **At a minimum, segregable portions of the**
                 **Four Withheld Documents should be released.**

      Defendants cite to *Judicial Watch*, 365 F.3d at 1114, for the proposition that Presidential

communications privilege "applies to documents in their entirety."  Nonetheless, FOIA states

that "any reasonably segregable portion of a record shall be provided to any person requesting

such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. §

552(b).  Presidential communications privilege does not protect "purely factual material

appearing in [requested] documents in a form that is severable without compromising the private

remainder of the documents."  *EPA v. Mink*, 410 U.S. 73, 91 (1973).

      As explained by *In re Sealed Case*, the Presidential communications privilege is

"qualified":

> The Nixon cases establish the contours of the presidential
> communications privilege.  The President can invoke the privilege
> when asked to produce documents or other materials that reflect
> presidential decisionmaking and deliberations and that the
> President believes should remain confidential.  If the President
> does so, the documents become presumptively privileged.
> However, the privilege is qualified, not absolute, and can be
> overcome by an adequate showing of need.  If a court believes that
> an adequate showing of need has been demonstrated, it should then
> proceed to review the documents *in camera* to excise non-relevant
> material.  The remaining relevant material should be released.

---

[6] In *Julian*, the Supreme Court opened the possibility that there may be "valid reasons for
treating a claim of privilege under Exemption 5 differently as to one class of those who make
requests than as to another class." 486 U.S. at 14.

121 F.3d at 744-45.

It follows that if any portion of the Four Withheld Documents contains factual information that is reasonably segregable, defendants should, at minimum, disclose that portion to Loving.

## III.    CONCLUSION

For the reasons addressed above, defendants' summary judgment motion should be denied, and plaintiff's cross-motion for summary judgment should be granted.

Respectfully submitted,


/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
Charles F. Schill (D.C. Bar # 230326)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795
Telephone: (202) 429-8090
Facsimile: (202) 429-3902

Of Counsel:
Teresa L. Norris*
Blume Weyble & Norris, LLC
P.O. Box 11744
Columbia, SC 29211
Telephone: (803) 765-1044
Facsimile: (803) 765-1143

* moving for *pro hac vice* admission

*Attorneys for Plaintiff*

Dated:  May 11, 2007

# EXHIBIT 1

## Sanchez, George OTJAG

| | |
|---|---|
| **From:** | Darpino, Flora D COL OTJAG |
| **Sent:** | Wednesday, January 25, 2006 5:06 PM |
| **To:** | Phelps, John T COL USALSA; Cotell, Robert J LTC OTJAG |
| **Cc:** | Black, Scott C MG OTJAG; Gallagher, Theresa A LTC OTJAG; Brunson, Kirsten V LTC OTJAG |
| **Subject:** | Re: Notification of Delivery of US v. Loving (UNCLASSIFIED) |

Ms Norris has been provided notice separately via USPS.


-----Original Message-----
From: Phelps, John T COL USALSA
To: Cotell, Robert J LTC OTJAG
CC: Black, Scott C MG OTJAG; Darpino, Flora D COL OTJAG; Gallagher, Theresa A LTC OTJAG;
Brunson, Kirsten V LTC OTJAG
Sent: Wed Jan 25 16:08:21 2006
Subject: RE: Notification of Delivery of US v. Loving (UNCLASSIFIED)

Classification:  UNCLASSIFIED
Caveats: NONE

1. I have received your notification of delivery of the case of US v Loving to the
President of the United States.

2. There is nothing that I can find in the UCMJ, MCM or AR 160-55 regarding the role of
the Defense Appellate Division (DAD) once the appellate process is complete and the matter
is sent to the President for action. By being furnished this information am I to conclude
that DAD is responsible, and directed, to provide assistance to Dwight Loving regarding
his case now before the President? If so I request that DAD be provided with all
documents, recommendations, endorsements and other documentation that has been provided to
the President for his consideration. In addition, I request that DAD be provided with any
rules, procedures and guidance relating to the clemency process. Up to this point we have
not provided any assistance or representation to Dwight Loving regarding any clemency
matters or the action pending before the President nor have we received any guidance or
information regarding the process.

3. During the appellate process Dwight Loving was represented by civilian counsel, Teresa
Norris, who acted as lead counsel. It is my understanding that she continues to act as his
lead counsel. I note that she was not copy furnished on the letter signed by the Judge
Advocate General nor was she an addressee on this e-mail notification.


Col John Phelps

Chief, DAD


---------

From: Cotell, Robert J LTC OTJAG
Sent: Wednesday, January 25, 2006 1:28 PM
To: Cruz, Anthony LTC Army G3/AOC; Haasenritter, David K Mr ARBA; 'Harrison, James COL,
USDB'; Jones, Anthony D Mr OGC; Cotell, Robert J LTC OTJAG; Shear, James J LTC IACH; Hart,
Pamela L LTC OCPA; Brewer, Carol A CPT OTJAG; Pede, Charles N COL OCLL; Risch, Stuart W
LTC OCLL; Yamanaka, Bill Mr OCPA; Phelps, John T COL USALSA; Salata, Steven T COL OTJAG;
Gallagher, Theresa A LTC OTJAG; Donahue, Brian J COL HQDA DCS G-3/5/7; Alexander, David R

34    1

III LTC ASA-MRA
Cc: Darpino, Flora D COL OTJAG; Brewer, Carol A CPT OTJAG
Subject: Notification of Delivery of US v. Loving


To ALL:  The attached memorandum from the The Judge Advocate General provides notice as
required by AR 190-55, para. c(3) that a capital case has left the Department of the
Defense and has been delivered to the White House.  Those recipients who are adjutants or
deputies to the primary DA staff officer designated to receive the notice should provide
copies to the designated DA officer.  The recipients are specified on the memorandum.


LTC Cotell

Deputy, Criminal Law Division

Office of the Judge Advocate General

Classification:   UNCLASSIFIED
Caveats: NONE

$35$