UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DWIGHT J. LOVING,                                       )<br>                                                                    )<br>            Plaintiff,                                      )<br>                                                                    )<br>       v.                                                       )<br>                                                                    )<br>UNITED STATES DEPARTMENT          )<br>OF DEFENSE, *et al.*,                              )<br>                                                                    )<br>            Defendants.                              )<br>                                                                    ) | Civil Action No. 06-1655 (ESH) |

## MEMORANDUM OPINION

Plaintiff Dwight Loving seeks records pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, from the Department of Defense ("DoD") and the Army concerning the President's pending review of plaintiff's military death sentence. This matter is before the Court on the parties' cross-motions for summary judgment. The issue is whether the defendants have properly invoked FOIA Exemption 5 to withhold four documents. As explained herein, the Court finds that the documents at issue were properly withheld. Accordingly, the Court will grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

### BACKGROUND

In 1989 plaintiff, an Army private stationed at Fort Hood, Texas, was convicted of felony murder, premeditated murder, attempted murder and robbery under Article 118 of the Uniform Code of Military Justice ("UCMJ"). (Defs.' Statement of Material Facts as to Which There is No Genuine Issue ["Defs.' Statement"] ¶ 1). A general court-martial sentenced plaintiff to death. *United States v. Loving*, 517 U.S. 748, 751 (1996). A series

of unsuccessful appeals and reviews followed. *See United States v. Loving*, 41 M.J. 213 (1994), *Loving*, 517 U.S. 748. However, the review of plaintiff's death sentence is not yet final, because it has not been approved by the President of the United States. 10 U.S.C. § 871(a) ("If the sentence of the court-martial extends to death, that part of the sentence providing for death may not be executed until approved by the President"); *see also* Manual for Courts-Martial, Rule for Courts-Martial ("R.C.M.") 1207 ("No part of a court-martial sentence extending to death may be executed until approved by the President."). The procedure for transmitting a military capital case to the President is set forth in R.C.M. 1204(c)(2) and Army Regulation 190-55, which require the Judge Advocate General to transmit his or her recommendation along with court records and any clemency petition by the prisoner to the Secretary of the Army for action by the President. R.C.M. 1204(c)(2); Army Regulation 190-55.

The Acting Secretary of the Army prepared a memorandum for transmittal of plaintiff's case to the President in November 2004, but the case was then put on hold pending the outcome of plaintiff's appeals. (Defs.' Statement ¶ 9.) In August 2005, plaintiff submitted FOIA requests to the DoD and the Army seeking any documents regarding procedures for the forwarding of military death penalty cases to the President during the relevant times. (*See id.* ¶ 7.) Plaintiff also submitted Privacy Act requests for any documents containing opinions or recommendations regarding the approval or commutation of his death sentence and any other Army or DoD documents pertaining to his death sentence. (*See id.*)

In December 2005, the Court of Appeals for the Armed Forces denied plaintiff's two remaining petitions for extraordinary relief, but permitted him to file a habeas

petition, which plaintiff did the following month. *Loving v. United States*, 62 M.J. 235 (2005). In January 2006, the Secretary of the Army delivered plaintiff's case to the White House for presidential action. (Defs.' Statement ¶ 12.) That same month, Loving filed administrative appeals with both the DoD and the Army complaining of the lack of response to his FOIA and Privacy Act requests. (*Id.* ¶ 13.) In early February 2006, the DoD provided 133 pages of responsive documents and informed plaintiff that 104 further pages were being withheld under FOIA Exemptions 5 and 6. (*Id.* ¶¶ 17, 21.) Plaintiff filed an administrative appeal in April 2006. (Pl.'s Statement of Material Facts Not in Dispute ["Pl.'s Statement"] ¶ 2.) On September 26, 2006, plaintiff filed this action against the Army and DoD, seeking declaratory and injunctive relief for the release of responsive agency records. (Defs.' Statement ¶ 26.) Days after he filed this action, the Court of Appeals for the Armed Forces ruled in plaintiff's habeas case that his claim of ineffective assistance of counsel at trial was potentially meritorious and ordered an evidentiary hearing to establish the factual predicate for this claim. (Pl.'s Statement ¶ 1.)

After this case was filed, defendants released nearly 700 pages of responsive documents and withheld a similar number of documents under exemptions to FOIA and the Privacy Act. (Defs.' Statement ¶¶ 27, 30, 31, 35.) Defendants then moved for summary judgment, arguing that the documents not produced had been properly withheld. Plaintiff filed a cross-motion seeking release of ten of the withheld documents.

Ultimately, plaintiff narrowed his summary judgment motion to the following four documents which are identified by Vaughn Index number:

> #408    A 31-page memorandum from the Judge Advocate General of the Army to the Secretary of the Army (forwarded to the President pursuant to R.C.M. 1204(c)(2)) reflecting the Judge Advocate General's analysis of plaintiff's case and recommendation as to whether the Secretary should recommend

>           that the President approve plaintiff's death sentence, dated January 13,
>           2004;
>
> #499    A one-page memorandum addressed from the Secretary of the Army to the
>         President "containing the [Secretary's] recommendation regarding
>         whether or not PVT Loving's death sentence should be approved," dated
>         November 8, 2004;
>
> #86     A one-page memorandum from the Secretary of Defense to the President
>         forwarding plaintiff's military court-martial capital case to the President
>         for action, dated January 8, 2006;
>
> #87     An undated one-page memorandum from the DoD Office of the General
>         Counsel to the Counsel to the President concerning "The President's
>         Action in Two Military Capital Cases."

(Pl.'s Reply at 3.) Defendants contend these documents are exempt under FOIA Exemption 5 because they are subject to the deliberative process privilege, the presidential communications privilege, the attorney-client privilege and/or the attorney work product doctrine. (Defs.' Reply at 8-11.) Plaintiff disputes defendants' privilege claims and argues that the documents are akin to presentence investigation reports ("PSRs"), which must be disclosed under FOIA. (Pl.'s Reply at 4, 7-10.)

## ANALYSIS

**I.     Legal Standard**

FOIA mandates that "each agency, upon any request for records . . . , shall make the records promptly available to any person" for "public inspection and copying," unless the records fall within one of the nine narrowly construed statutory exemptions. *See* 5 U.S.C. §§ 552(a)(2) & (a)(3)(A). FOIA is broadly conceived to permit access to official information as part of a "general philosophy of full agency disclosure." *EPA v. Mink*, 410 U.S. 73, 80 & n.6 (1973) (citation omitted); *see also Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 754 (1989). An agency withholding information

4

pursuant to a FOIA exemption bears the burden of justifying this decision, and challenges to an agency's decision to withhold documents are reviewed *de novo* by the district court. *See* 5 U.S.C. § 552(a)(4)(B); *King v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987).

Summary judgment may be granted to the government in a FOIA case if "the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." *Greenberg v. U.S. Dep't of Treasury*, 10 F. Supp. 2d 3, 11 (D.D.C. 1998) (citation omitted). Summary judgment may be awarded based solely on the information provided in declarations or affidavits when they explain "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981) (citations omitted). Summary judgment is inappropriate if the declarations are "conclusory, merely reciting statutory standards, or . . . too vague or sweeping." *King*, 830 F.2d at 219 (internal quotation marks and citation omitted).

**II.    Exemption 5**

FOIA Exemption 5, on which defendants rely to withhold the four documents at issue, permits the government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Exemption 5 has been interpreted to incorporate, *inter alia*, the presidential communications privilege, the attorney-client

5

privilege, the work product doctrine, and the deliberative process privilege. *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 321 (D.C. Cir. 2006). Defendants have invoked some or all of these privileges as to the four documents at issue. The test under Exemption 5 is whether upon a showing of relevance, the documents would "routinely" or "normally" be disclosed in a civil discovery context. *U.S. Dep't of Justice v. Julian*, 486 U.S. 1, 12 (1988). Because the Court finds that all four documents are protected by the presidential communications privilege or the deliberative process privilege, the Court need not address the remaining privileges invoked by the government.

  The deliberative process privilege protects confidential intra-agency advisory opinions and materials reflecting deliberative or policy-making processes. *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). The purpose of the privilege is to protect the quality of agency decisions by allowing government officials the privacy to debate alternative approaches. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-51 (1975). There are two requirements for the deliberative process privilege: the material must be both predecisional and deliberative. *In re Sealed Case*, 121 F.3d at 737. A document is predecisional if it is "generated before the adoption of an agency policy." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is deliberative if it "reflects the give-and-take of the consultative process." *Id.* at 866. The deliberative process privilege generally does not cover the purely factual portions of documents, except in cases where the factual material "is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." *In re Sealed Case*, 121 F.3d at 737.

The presidential communications privilege is a "[p]resumptive privilege for Presidential communications . . . [that is] fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution." *United States v. Nixon*, 418 U.S. 683, 708 (1974).  The privilege can be invoked as to "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential," and, if it is invoked, the documents become presumptively privileged.  *In re Sealed Case*, 121 F.3d at 744.  The privilege exists to ensure candor and objectivity with respect to the advice that the President receives from his advisors.  *Nixon*, 418 U.S. at 708; *see also In re Sealed Case*, 121 F.3d at 743.  Accordingly, it extends not only to communications directly involving and documents actually viewed by the President, but also it applies to communications authored or solicited and received by those immediate White House advisors with "broad and significant responsibility for investigating and formulating the advice to be given the President on the particular matter to which the communications relate." *Id.* at 752; *see also Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1114 (D.C. Cir. 2004). Unlike the deliberative process privilege, the presidential communications privilege covers documents in their entirety.  *In re Sealed Case*, 121 F.3d at 745.

Defendants claim that all of the documents are covered by the presidential communications privilege.  As to three of those documents - - #408, 499, and 86 - - the Court agrees.  Two of the documents, a November 8, 2004 memorandum from the Secretary of the Army to the President setting forth the Secretary's recommendation as to whether plaintiff's death sentence should be approved (#499), and a January 8, 2006 memorandum from the Secretary of Defense to the President forwarding plaintiff's case

7

to the President for action (#86), are communications to the President prepared to advise him regarding his decisionmaking with respect to plaintiff's death sentence. (Darpino Decl. ¶ 33 & Vaughn Index; Second Darpino Decl. ¶ 3 & Revised Vaughn Index; Reed Decl. ¶ 10 & Ex. A (Vaughn Index).)

Although the third document is a memorandum from the Army Judge Advocate General to the Secretary of the Army (#408), that memorandum, which reflects the Judge Advocate General's analysis and recommendation regarding plaintiff's death sentence, was appended to the Secretary of the Army's recommendation and forwarded on January 23, 2006, to the President along with that document and the memorandum from the Secretary of Defense. (Darpino Decl. ¶¶ 7, 33 & Vaughn Index; *see also* Defs.' Mem. at 5; Defs.' Reply at 10 n.8.) Moreover, the Judge Advocate General's memorandum was prepared pursuant to the Manual for Courts-Martial, in which the President has directed that in cases involving a sentence that must be approved by the President, the Judge Advocate General shall transmit his or her recommendation to the Secretary "for the action of the President." R.C.M. 1204(c)(2); *see also* 10 U.S.C. § 836 (procedures for cases triable in courts-martial are prescribed by the President); Darpino Decl. ¶ 32.

Plaintiff argues that although these documents may have been "received" by the President, it is unclear whether any of them was "solicited" by the President. (Pl.'s Reply at 7.) However, as noted, the President has solicited the advice of his military advisors through the Manual for Courts-Martial. *See* R.C.M. 1204(c)(2). Plaintiff also notes that it is "unclear" whether the President has personally invoked the presidential communications privilege with respect to the documents at issue (Pl.'s Reply at 8), but personal invocation is not required as to FOIA requests. *Lardner v. U.S. Dep't of Justice*,

8

No. 03-0180, 2005 WL 758267, at *6 (D.D.C. Mar. 31, 2005).  Finally, plaintiff suggests that even if the documents are presumptively privileged, he has made a showing of need sufficient to overcome the privilege.  (Pl.'s Cross-Mot. at 14.)  While the presidential communications privilege is qualified and can be overcome by a showing of sufficient need in the course of a criminal investigation, *see, e.g.*, *Nixon*, 418 U.S. at 706-07, this principle is inapplicable to FOIA, where the particular need of the applicant is not relevant.  *Engelking v. Drug Enforcement Admin.*, 119 F.3d 980, 980-81 (D.C. Cir. 1997); *see also In re Sealed Case*, 121 F.3d at 737 & n.5.  The Court therefore finds that documents #408, 499, and 86 have been properly withheld under Exemption 5's presidential communications privilege.

The fourth document (#87) is an undated, one-page memorandum from the DoD Office of the General Counsel ("OGC") to the Counsel to the President regarding the President's action in two military capital cases (#87).  (Reed Decl., Ex. A.)  Although defendants also invoke the presidential communications privilege as to this document, it is unclear, based on the present record, whether that privilege applies.  As noted, the presidential communications privilege extends to documents "solicited and received" by the President's immediate advisors, including his White House Counsel.  *In re Sealed Case*, 121 F.3d at 752, 758.  However, neither defendants' declarations nor the accompanying Vaughn Indices indicate whether the DoD OGC memorandum was created at the request of White House Counsel.  *See id.* at 758 (White House must ordinarily show that communications received by presidential advisers that do not directly involve the President were solicited).  The Court nevertheless finds that this document was properly withheld under the deliberative process privilege.  According to

defendants' declarations, the memorandum was prepared as part of a project initiated by the DoD OGC to create standardized review and staffing procedures for capital cases for all Military Departments. (Reed Decl. ¶¶ 2, 5-6.) No new procedures were ultimately adopted as a result of the initiative; hence, the memorandum is clearly predecisional. (*Id.* ¶ 2.) It is also deliberative in that it contains evaluations, opinions, and/or recommendations pertaining to the DoD OGC project. (*Id.* ¶ 6.) Accordingly, the Court finds that the DoD OGC memorandum (document #87) is protected by the deliberative process privilege.

Plaintiff also argues that disclosure of the four documents is mandated by *U.S. Department of Justice v. Julian*, 486 U.S. 1 (1988). That case is inapposite. *Julian* involved FOIA requests by individual inmates for copies of their PSRs. *Id.* at 6. The government argued that the reports were exempt from disclosure, citing, *inter alia*, Exemption 5. The Court rejected the government's argument, finding no privilege that prevented disclosure of a PSR when the requester is the subject of the report. *Id.* at 14.

Plaintiff argues that the four documents at issue here are "sentencing recommendations" that are analogous to and should be treated like a PSR. (Pl.'s Cross-Mot. at 11-13.) In holding that PSRs were not privileged, at least when requested by the subject of the report, the Supreme Court relied on Federal Rule of Criminal Procedure 32(c) and the Parole Act, 18 U.S.C. § 4205, both of which specifically require disclosure of a PSR to the defendant to whom it pertains at various stages of the criminal process. *Julian*, 486 U.S. at 4-5 (summarizing disclosure requirements). Noting the ability of Congress to "determine for itself which privileges the Government may avail itself of and which it may not" (at least to the extent that the privileges at issue are not constitutionally

10

rooted), the Court found the privilege claims of the government untenable in light of these statutory disclosure provisions:

> [T]he thrust of the disclosure portions of Rule 32(c) and the Parole Act speaks so strongly against the existence of a privilege on the part of the Government when the request is from the subject of the report that we think it accurate to say that Congress has strongly intimated, if it has not actually provided, that no such privilege should exist.

*Id.* at 13.

Here, in contrast, there is no requirement of any sort that recommendations to the President regarding a court-martial death sentence be disclosed to the affected service member, and there is thus no basis upon which to conclude that the disclosure of such recommendations is "routine." *See id.* at 14. Although plaintiff does not dispute this, he argues that disclosure would be consistent with R.C.M. 1106(f), a post-trial procedural rule requiring the staff judge advocate's sentencing recommendation to be served on the accused and his counsel, who may then submit written corrections, rebuttal, or other comments on the recommendation. (Pl.'s Cross-Mot. at 12-13.) R.C.M. 1106(f), however, applies only to the staff judge advocate's recommendation to the convening authority regarding the action the convening authority should take on the sentence "in the exercise of command prerogative." R.C.M. 1106(a), (d)(1). The absence of a similar disclosure provision in R.C.M. 1204(c)(2) strongly suggests that disclosure of the recommendation referenced therein is not required.[1]

---

[1] Plaintiff also argues that the lack of a specific disclosure requirement is not dispositive since *Julian* simply follows the Supreme Court's protection of due process. (Pl.'s Reply at 8.) However, contrary to plaintiff's argument, nothing in *Julian* indicates that the decision was based on due process concerns.

11

**III.    Segregability**

Finally, plaintiff argues that defendants have not satisfied their burden to show that the withheld documents contain no "reasonably segregable" factual information. (Pl.'s Cross-Mot. at 15-16; Pl.'s Reply at 11-12.)  The FOIA requires that "even if some materials from the requested record are exempt from disclosure, any 'reasonably segregable' information from those documents must be disclosed after redaction of the exempt information unless the exempt portions are 'inextricably intertwined with exempt portions.'"  *Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting 5 U.S.C. § 552(b) and *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)).  The agency must provide a "detailed justification" for its decision to withhold documents in their entirety as non-segregable.  However, "the agency is not required to provide so much detail that the exempt material would be effectively disclosed."  *Id.*

With respect to documents #408, 499, and 86, because the presidential communications privilege "applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones," *In re Sealed Case*, 121 F.3d at 745, these documents are exempt in their entirety, and no further showing as to segregability is necessary.  *See also id.* ("Even though the presidential privilege is based on the need to preserve the President's access to candid advice, none of the cases suggest that it encompasses only the deliberative or advice portions of documents.").[2]

---

[2]Plaintiff asserts that the presidential communications privilege "does not protect 'purely factual material appearing in [requested] documents in a form that is severable without compromising the private remainder of the documents.'" (Pl.'s Reply at 11.) However, the case on which plaintiff relies for this proposition, *EPA v. Mink*, 410 U.S. 73

12

In contrast to the presidential communications privilege, the deliberative process privilege does not apply to purely factual portions of documents that can be segregated from the opinions therein. *Mink*, 410 U.S. at 91. With respect to document #87, the one-page DoD OGC memorandum, defendants have provided plaintiff with a description of the document, as well as the Declaration of Robert E. Reed, the Associate Deputy General Counsel for Military Justice and Personnel Policy in the DoD OGC, who avers that DoD "released to plaintiff all material that could be reasonably segregated." (Reed Decl. ¶ 8.) Furthermore, defendants have voluntarily segregated and disclosed factual portions of hundreds of other documents in the present case. (*See* Defs.' Statement ¶¶ 27, 31.) The Court finds that the government's declaration and supporting material are sufficient to satisfy its burden to show with "reasonable specificity" why the document cannot be further segregated. *See Johnson*, 310 F.3d at 776.

## CONCLUSION

For the foregoing reasons, the Court will grant defendants' Motion for Summary Judgment and deny plaintiff's Motion for Summary Judgment.

                                                       /s/
                                       ELLEN SEGAL HUVELLE
                                       United States District Judge

Date: July 26, 2007

---

(1973), concerned the deliberative process privilege and did not address the presidential communications privilege. *See In re Sealed Case*, 121 F.3d at 739 n.8.